In re Erasto J. Arjona Siaca y Guillermo S. Pierluisi, querellados.

No. 21.—*Sometido:* Marzo 1, 1929. *Resuelto:* Nov. 7, 1929.

*R. Arjona, F. Colón* y *E. Campos del Toro,* abogados del querellado E. Arjona; *J. B. Soto, Agustín E. Font, Wilson P. Colberg* y *R. Atiles Moreu,* abogados del querellado Pierluisi; *José E. Figueras* y *R. Quiñones, Fiscales del Supremo y del Distrito de Ponce,* respectivamente, abogados de *El Pueblo.*

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

El martes 19 de abril de 1927, el Dr. Emilio Cumpiano instó acción en la Corte de Distrito de Ponce contra Juan H. Pacheco y Atilano Garay recabando la entrega de un cuadro del *pool* cuyo valor original había aumentado grandemente como resultado de las carreras celebradas en Ponce el domingo anterior, 17 de septiembre.

Al ser notificados por el marshal en la tarde del martes con una orden para que entregaran el cuadro del *pool,* Garay manifestó que el mismo estaba en poder de su abogado, y Pacheco dijo que lo tenía el letrado Erasto J. Arjona.

En la mañana del siguiente día, miércoles 20 de abril, Arjona fué notificado con una orden similar. Negó que el cuadro estuviera en poder suyo, y ofreció cooperar con la corte para localizarlo.

Poco después Arjona fué a la oficina de Guillermo S.

Pierluisi y empezó a preparar un instrumento notarial que se decía haber sido otorgado el 18 de abril ante Pierluisi como notario público. De acuerdo con los términos de la escritura, Pacheco dió en prenda el cuadro a un tal José M. Gómez, como garantía de una deuda preexistente. Pierluisi estuvo ausente durante la mañana, pero volvió a su bufete en las primeras horas de la tarde. Arjona dió fin a su trabajo como a las cinco. Leyó entonces el documento en voz alta en presencia de las partes y los testigos. Después que ellos habían firmado, lo sometió a Pierluisi para que lo autenticara. Pierluisi llamó la atención de Arjona hacia el error de fecha. Arjona respondió que podía corregirse el error en la mañana del día siguiente cuando se fijarían los correspondientes sellos de rentas internas, por no tenerlos disponibles de momento. Todas las partes interesadas estuvieron conformes con esta indicación, y Pierluisi firmó como notario.

Pocos minutos después del otorgamiento de este contrato antedatado, el abogado de Cumpiano se enteró de él. Al poco rato se presentó en el bufete de Pierluisi con una orden de la corte requiriendo la entrega de copia de la escritura. Pierluisi suministró al abogado una copia certificada y le manifestó que se había cometido un error al redactar el original. El fiscal de distrito estaba esperando recibir esa copia. De no estar ya trabajando en el caso, la detective había sido llamada para ayudar en la investigación.

Tanto Arjona como Pierluisi son jóvenes idóneos y de buena reputación anterior, que habían sido admitidos al foro poco antes. El primer Procurador General Auxiliar (en aquel entonces Procurador General interino) y otros testigos ocuparon la silla testifical para declarar en favor de la reputación de Arjona. Uno de los jueces de distrito de Ponce y un fiscal auxiliar atravesaron la Isla para venir a expresar su confianza más firme, y la de la comunidad, en Pierluisi, de quien hablan en términos altamente laudatorios.

Al otorgarse el contrato de prenda, Pierluisi sólo había

estado ejerciendo como abogado y notario durante tres meses. Él nada sabía respecto al litigio pendiente sobre el cuadro. No tenía interés alguno en el contrato. Sus servicios como notario fueron gratuitos. La escritura hacía el número diez y ocho de su primer protocolo. Su única relación con el otorgamiento de la escritura fué la de estampar su firma y sello notarial con el entendido de que el error de fecha sería corregido en la mañana del siguiente día.

Cualquier propósito que pudiera haber tenido Arjona al antedatar el documento no se tornó en un designio común, porque fué abandonado cuando Arjona y las partes contratantes convinieron, como condición previa a la firma de Pierluisi, que el error de fecha sería subsanado. Lo que Pierluisi tuvo la intención de autenticar no fué el documento antedatado que se le puso delante después de haber sido firmado por las partes y los testigos, sino ese documento tal como aparecería en su protocolo después que se volvieran a escribir las dos primeras páginas a la mañana siguiente. Su indiscreción, por grande que sea, queda explicada por su juventud e inexperiencia. No hubo conducta inmoral (*malpractice*) en un sentido tal que justifique su destitución, porque no hubo *mens rea*. La lección recibida como resultado del procedimiento de autos debe ser suficiente para proteger a la sociedad de la reincidencia de un caso semejante, en lo que a Pierluisi se refiere.

El caso de Arjona presenta distinto aspecto.

La fecha falsa en el primer párrafo del contrato de prenda no fué un error mecanográfico (*clerical error*). En la segunda página, en la tercera cláusula del documento, se hace referencia a "las carreras hípicas celebradas el día diez y siete de abril de mil novecientos veintisiete, o sea, en el día de ayer." El contrato fué redactado por Arjona el miércoles 20 de abril. En aquel entonces, "ayer" era martes, abril 19 (fecha en que Cumpiano inició su acción). La íntima correspondencia entre la fecha falsa contenida en el primer párrafo y lo dicho falsamente en la tercera cláusula del con-

trato, es palmaria. Si estuviera aislada, la fecha falsa podría ser un error cometido de buena fe. La cuidadosa redacción de la tercera cláusula del contrato para ajustarla a la fecha falsa contenida en el primer párrafo no fué un desliz de la pluma. La coincidencia entre la fecha incierta y el dicho falso no fué un accidente.

El motivo lo da el artículo 1766 del Código Civil al disponer que:

"No surtirá efecto la prenda contra tercero si no consta por instrumento público la certeza de la fecha."

Cierto es que Arjona no ofreció el contrato antedatado en evidencia durante el juicio del caso de Cumpiano. También es verdad que en una copia certificada de la escritura, expedida a nombre de Gómez, el tercer párrafo aparece enmendado, y que la fecha falsa que consta en el primer párrafo fué corregida. Puede admitirse que la promesa de Arjona de reformar el instrumento se habría cumplido aún en el caso de que el abogado de Cumpiano y el fiscal de distrito hubiesen estado menos alertas o no hubieran actuado tan de improviso. La premura con que Arjona abandonó su propósito al señalar Pierluisi la discrepancia entre las fechas puede ser considerada como indicativa de que la promesa de efectuar la enmienda fué hecha de buena fe. Éstas son circunstancias atenuantes.

Acaso Arjona no se dió perfecta cuenta de la seriedad de una falta que daría amplio fundaménto para destituir permanentemente a un abogado más entrado en años y de mayor experiencia. La juventud y la inexperiencia inclinarían la balanza, como en el caso de Pierluisi, cuando hubiere lugar a dudas en cuanto a la intención para tergiversar los hechos. En el caso de Arjona no hay lugar a dudas en cuanto a este extremo. Él antedató deliberadamente un contrato de prenda redactado por él en forma de un instrumento público, y ob-

tuvo las firmas de las partes contratantes y de los testigos, con el fin de hacer que un colega lo autenticara. La obvia explicación de este propósito, y la única lógica, puede hallarse en el artículo 1766, *supra*. Él obtuvo las firmas de las partes y los testigos y sometió el documento al notario. Si Pierluisi no hubiese notado la fecha falsa, los fines de Arjona se habrían realizado.

La calificación más caritativa que puede darse a esa conducta es la de caracterizarla como contraria a los cánones de la profesión (*unprofessional*), y, por tanto, como equivalente a conducta inmoral (*malpractice*) dentro del significado de la sección 172 de los Estatutos Revisados de 1911, que lee en parte así:

"El abogado que fuere culpable de engaño, conducta inmoral (*malpractice*), delito grave (*felony*) o delito menos grave (*misdemeanor*), en conexión con el ejercicio de su profesión o que fuere culpable de cualquier delito que implicare depravación moral, podrá ser suspendido o destituído de su profesión por la Corte Suprema de Puerto Rico."

Dado el criterio que hemos adoptado aquí sobre este asunto, huelga considerar ciertas cuestiones de derecho suscitadas durante la vista, resueltas por el tribunal, y argumentadas de nuevo extensamente en los alegatos.

Se declara a Guillermo S. Pierluisi no culpable de tal conducta inmoral que justifique esta vez su separación o suspensión del ejercicio de su profesión.

Se declara a Erasto Arjona Siaca culpable de conducta inmoral dentro del significado de este término, según se usa en el estatuto proveyendo la suspensión de un abogado que sea culpable de cualquier engaño, conducta inmoral, delito grave o menos grave, y *se le suspende del ejercicio de su profesión de abogado y notario público por un período de dos años*.

El Juez Asociado Señor Texidor no intervino.